MEYER, Special Administratrix, Appellant, vs. DOHERTY,
Respondent.

*October 17—November 5, 1907.*

*Trover and conversion: Pleading: Complaint: Sufficiency: Surplus-
age: Estates of decedents: Conversion during lifetime of dece-
dent: Appeal and error: Matters reviewed: Transactions with
an incompetent: Acts constituting conversion: Cashing a check
wrongfully obtained: Effect: Bills and notes: Checks: Presump-
tion of payment: Illegal taking or holding of property: Right of
action: Necessity of demand: Denial of possession or appropri-
ation: Perfecting cause of action.*

1. In an action by an administrator for conversion of the funds of
his intestate, a complaint alleging that defendant had his dece-
dent's money in his possession at the time of her death and

that he retains the same in his possession and has converted it to his own use sufficiently alleges a taking and conversion of the money before her death.

2. An allegation of such complaint that, though often requested to do so, the defendant refuses to pay the same over to plaintiff as administrator of decedent's estate, does not limit the right to recover for a conversion after the decedent's death.

3. In an action by an administrator for conversion of moneys belonging to his intestate, on proof that the defendant actually converted decedent's money in her lifetime, allegations of refusal to pay the money to the administrator become immaterial, and the cause of action may be sustained without proof of such fact, which bears only on the question of the time of the conversion.

4. Where a trial court treated the plaintiff administrator's offer to prove his decedent mentally incapacitated to transact business at the time the defendant secured from the decedent certain checks and their proceeds as the basis for a ruling as to the admissibility of such evidence in the case, the supreme court, for the purpose of an appeal, treats the case as though such facts were in evidence and had been disregarded by the court in determining the rights of the parties.

5. Where a son wrongfully obtained checks from his mother, since deceased, it operated as a fraud upon decedent, and the son acquired no right or interest in them or the money obtained thereon.

6. In such case the payment of the money by the bank, because of the son's wrongful conduct, is *held* to have operated to vest in the decedent all the rights and whatever interest the bank transferred in the transaction, left defendant without any right to the proceeds, and rendered him liable to her estate for his wrongful conversion the same as though he had obtained the money directly from her.

7. While the payment of the check by the bank amounted to a satisfaction of the decedent's claim against the bank, and although the check was the medium through which this was accomplished, in view of the want of *bona fides* in the transaction the check cannot be held to constitute an actual transfer by decedent to the son of the right to the money paid on it.

8. In a *bona fide* transaction the giving of a check is presumptive evidence of the payment of a debt, but this presumption is not conclusive and may be overcome by other evidence.

9. Where a son wrongfully obtained a check from his mother, since deceased, on which he collected the money, in an action by the

personal representative of the mother for conversion the fact that the property alleged to have been converted was money in no way affects the plaintiff's rights, since it is to be presumed, if the son's wrongful conduct be established, that he knew it was decedent's money and will be held to the same liability as if he had wrongfully converted some other of her property.

10. The rule is well established that in an illegal taking or wrongful assuming of a right to personal property the very manner of the illegal taking or wrongful holding constitutes a conversion, and no further step is necessary to perfect the right of action.

11. In an action of trover or for the recovery of personal property, an averment of its wrongful taking is sufficient without alleging a demand for its return, if sustained by proof of its original wrongful taking or subsequent wrongful appropriation.

12. In an action of trover, where the defendant denies all possession or appropriation, a demand is not necessary to perfect the cause of action, if it be shown that the property was obtained through wrongful conduct.

13. In an action of trover a complaint in the usual form is not insufficient because it omits to state the particulars of the claim or the facts on which the conversion is predicated.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Reversed.*

This is an action by the special administratrix of the estate of Mary Doherty, deceased. The complaint states that Mary Doherty died in La Crosse county on the 19th day of April, 1905, and that the plaintiff has been duly appointed administratrix of her estate.

"That the defendant, *William Doherty,* had in his possession at the time of her death the sum of $8,000, as plaintiff is informed and believes, the property of the said Mary Doherty."

"That said *William Doherty* refuses to pay or deliver the same to this plaintiff, although often requested so to do, but retains same in his possession, and, as plaintiff is informed and believes, has converted the same to his own use, wherefore she asks judgment against this defendant for the sum of $8,000 and interest thereon from June 1, 1905, besides the costs of this action."

The defendant answered by a general denial, except as to the sum of $460; $260 of which he claims to have paid out for debts and for the funeral expenses of Mary Doherty. On the trial there was evidence tending to show that the deceased was in her eighty-eighth year at the time of her death; that for some time previous to her death she had lived with the defendant; that when she came to live with the defendant she had two bank books showing deposits of $3,607.40; that the defendant drew these deposits from the bank on four checks signed by the deceased by her mark; that she had an income of $25 per month; that she had deeded her house and farm to the defendant seven years before her death; that she left six children surviving her; and that the $460 described in the answer was found by the defendant in her trunk after her death. Questions were asked of the defendant tending to prove the character of his relationship to his mother and that he claimed as owner all of the property his mother had owned. The court excluded evidence offered by the plaintiff tending to show:

"That for three years previous to her . . . death she [Mary Doherty] was absolutely senile and incapable of doing any business whatever; that she constantly mistook this defendant, *William Doherty,* for her deceased husband; that she called him husband, and sent for him and talked with him as her husband, who had been dead for twenty years; that she did not know the difference between her own children and her husband; that she did not know her own children and did not know their names; that she did not know that her son John was dead; and that she was an absolute imbecile and incompetent to do any kind of business."

The court also refused to allow evidence offered tending to show:

"That she lived alone; that no one visited her except this son *William* and his children, who visited her daily; and that . . . when [plaintiff, who is a daughter of the deceased] visited her mother [she] was not known by her mother the last three years of her life."

On a motion that the action be dismissed because the evidence did not sustain any cause of action, the court in substance stated that under the facts adduced and the proposed offer the proper action to bring was an equitable one. This is an appeal from the judgment granting a nonsuit.

*C. L. Hood,* for the appellant.

*Geo. W. Bunge,* for the respondent.

SIEBECKER, J. The complaint charges the defendant with having converted a sum of money, the property of Mary Doherty, to his own use. Defendant admits having received $460 of her money after her decease, states that he has disbursed all but $200 of this amount in payment of her debts, funeral expenses, and for the erection of a suitable monument for her, and he denies that at the time of her death or thereafter he had in his possession any of her property except this sum. There is evidence tending to show that the deceased in her lifetime had deposits of about $3,600 in a bank, and that the defendant drew these deposits from the bank on four checks signed by the deceased. Upon the trial plaintiff sought to introduce evidence of decedent's mental capacity at the time of the execution and delivery of these checks. An objection to the reception of this evidence was interposed by respondent, and plaintiff then made an offer to show by evidence that the decedent at the time the checks were given was so weak mentally as to wholly incapacitate her from transacting any business, and that the respondent had obtained these checks and the proceeds thereof fraudulently and had converted them to his own use.

It is asserted that the complaint is one charging conversion of the money after the death of Mary Doherty. It alleges that the defendant had decedent's money in his possession at the time of her death and that he retains the same in his possession and has converted it to his own use. These facts sufficiently allege a taking and conversion of the money be-

fore her death. The allegation that, although often requested to so do, he refuses to pay the same to plaintiff as administratrix of decedent's estate, does not limit the right to recover for a conversion after Mary Doherty's death. If the evidence adduced should establish that the defendant actually converted decedent's money in her lifetime, then the allegation of his refusal to pay it to the administratrix becomes immaterial, and the cause of action may be sustained without proof of these facts, which bear only on the question of the time of the conversion.

Since the court treated the plaintiff's offer to prove that decedent was mentally incapacitated to transact business at the time defendant secured the checks and the proceeds thereof as the basis for a ruling as to the admissibility of such evidence in the case, we must, for the purposes of this appeal, treat the case as though such facts were in evidence and had been disregarded by the court in determining the rights of the parties. To so disregard them would be erroneous and would result in injustice to the plaintiff, for the reason that if defendant wrongfully secured the checks and the proceeds thereof, this would operate as a fraud upon decedent and would not vest in the defendant any right to the checks or the proceeds. Under such circumstances he would acquire no right to or interest in the money so obtained by his wrongful acts. The payment of the money by the bank, because of his wrongful conduct, operated to vest in the decedent all the rights and whatever interest the bank transferred in the transaction and left him without any right to it, and rendered him liable to her for his wrongful conversion of it. His wrongful participation in the transaction of obtaining the money from the bank placed him in the same relation to decedent's rights in it as if he had obtained it directly from her. The argument is made that the presentation of the check at the bank amounted to a satisfaction of decedent's claim against the bank through the payment of the money,

and, since the check was the medium through which this was accomplished, the check must be held to be an actual transfer by decedent to the defendant of the right to the money paid on it. This would be a valid claim if the transaction were not infected by defendant's wrong. True, in a *bona fide* transaction the giving of a check is presumptive evidence of the payment of a debt (*Stimson v. Vroman,* 99 N. Y. 74, 1 N. E. 147; *Bernard v. Fee's Estate,* 129 Mich. 429, 88 N. W. 1052; 1 Greenl. Ev. § 38), but this presumption is not conclusive and may be wholly overcome by other evidence. If the evidence should establish that the defendant fraudulently secured the checks, production of them, as between himself and the decedent, can avail him nothing, because they would operate to vest no right or interest to the proceeds of them in him.

The fact that the property alleged to have been converted is money in no way affects the situation, since it will be presumed, if his wrongful conduct be established, that he knew it was decedent's money, and he will be held to the same liability as if he had wrongfully converted some other of her personal property. *Atlantic Bank v. Merchants' Bank,* 10 Gray, 532; *Alexander & Co. v. Goldstein,* 13 Pa. Super. Ct. 518; *State v. Omaha Nat. Bank,* 59 Neb. 483, 81 N. W. 319; *Cook v. Monroe,* 45 Neb. 349, 63 N. W. 800; *Donohue v. Henry,* 4 E. D. Smith, 162; *Hinckley v. Lewis,* 45 Ill. 327. In an action for conversion the rule is well established that in an illegal taking or wrongful assuming of a right to personal property the very manner of the taking or the holding of the property constitutes a conversion, and no further step is necessary to perfect the right of action, since the right of action is complete. This rule is well established and recognized in the decisions of this court. *School Dist. v. Zink,* 25 Wis. 636; *Wheeler v. Pereles,* 40 Wis. 424; *First Nat. Bank v. Kickbusch,* 78 Wis. 218, 47 N. W. 267; *Oleson v. Merrill,* 20 Wis. 462. In the last case cited it is observed that, in an action of trover or for the recovery of property, an

averment of its wrongful taking is sufficient without demand, if sustained by proof of its original wrongful taking or subsequent wrongful appropriation. In this case defendant denies all possession or appropriation of any of decedent's money. Under such circumstances a demand for it is not necessary to perfect the cause of action, if it be shown that he obtained it through his wrongful conduct.

It is urged that the complaint is insufficient in not alleging the facts upon which the conversion is predicated. The complaint is in the usual form of conversion, without stating the particulars of the claim. This form of pleading is deemed sufficient under the rules of the Code. *McKinnon v. Vollmar,* 75 Wis. 82, 43 N. W. 800; *Kammermeyer v. Hilz,* 107 Wis. 101, 82 N. W. 689; *Thomson v. Elton,* 109 Wis. 589, 85 N. W. 425.

The circuit court erred in refusing to receive the evidence offered by the plaintiff.

*By the Court.*—Judgment reversed, and the cause remanded for a new trial.