BUELL S. BORDEN ET AL., APPELLEES, V. GENERAL INSURANCE COMPANY OF AMERICA, A CORPORATION, APPELLANT.
59 N. W. 2d 141

Filed June 5, 1953. No. 33265.

*Maupin & Dent,* for appellant.

*Beatty, Clarke, Murphy & Morgan,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is an action on a contract of fire insurance brought by appellees against appellant for recovery of a loss resulting by the destruction by fire of the property insured. The claims of appellees are that appellant, for a premium paid, issued and delivered to appellees a policy of fire insurance and thereby indemnified them against damage by fire of their stock of groceries and meats and the fixtures, furniture, and equipment, located and used in their retail grocery store and meat market in North Platte to the extent of the actual cash value of the property at the time of the loss not exceeding $20,000; that during the term of the policy the property was destroyed by fire; and that the actual cash value of it was in excess of the maximum indemnity provided by the policy.

The appellant admitted the issuance and delivery of the policy by it to appellees for a consideration; that it protected them against loss as defined therein to the extent of the actual cash value of the property described in the policy at the time of the loss to an amount not exceeding $20,000; that the property insured was the stock, fixtures, furniture, and equipment above described; that it suffered some loss and damage by fire while the insurance was effective; and appellant denied the other claims of appellees.

The jury made special findings of the actual cash value of the stock of merchandise and of the fixtures, furniture, and equipment of appellees on the date of the loss. It deducted from the value of the latter the salvage as the trial court required it to do and it returned a general verdict for appellees consistent with the special findings. The motion of appellant for a new trial was denied and judgment was rendered for the appellees.

The contending parties as shown by the record are Buell S. Borden, appellee, the owner of the property

destroyed by the fire, and the appellant. Claribel L. Borden, named as one of the appellees, will not be again mentioned herein. The merchandise consisting of groceries and meats referred to in the policy of insurance will be identified as the stock, and the fixtures, furniture, and equipment will be described as fixtures.

A part of the answer of appellant alleges that the business of appellee on the date of the fire and for a considerable time before it was unprofitable, in a failing condition, and was subject to sure liquidation and forced sale, and at the time of the fire that it was not possible to sell it as a going concern; that the store was conducted in a rented building and the tenancy was only from month to month; that a decree of foreclosure had been rendered in the district court for Lincoln County against appellee 6 days before the fire in an amount greater than $2,700 which was a first lien on the fixtures of appellee used in the operation of his business, and sale thereof had been ordered to satisfy the decree; that the fixtures were designed and constructed for use only in the building where they were at the time the insurance contract was made effective and where they were at the time they were destroyed, and they were not available for use in any other building or place of business; that the stock of groceries and meats had been reduced, unsalable merchandise had accumulated until the store could not supply its normal trade, and the stock and fixtures were not salable as a unit; and that appellee was estopped by virtue of his sworn evidence in prior litigation to contend or attempt to support any theory that the actual cash value of the property destroyed by the fire was other than what it could at that time have been sold for at a forced or liquidation sale. These matters were by the court, on motion of appellee, stricken from the answer. This is the basis of an assignment of error by the appellant.

The appellant denied the allegations of appellee concerning the value of property at the time it was de-

stroyed. The issue joined by the pleadings was the actual cash value of the property within the limitations of the policy. The appellant was entitled to show by competent evidence every available fact and circumstance that affected or tended to show the value of the property and this the law accorded it without further pleading than the denial it had made of the value claimed by appellee. There were many improper matters in the part of the answer that was eliminated. These invited evidence and contention on many matters foreign and immaterial to the issue of the case. Appellee had and was conducting a retail store at the time of the fire. The appellant was bound by contract to indemnify him to the amount of the actual cash value of the property destroyed as it existed at the time of the fire within the maximum amount provided by the contract. The issue was, what was that value. The poverty or wealth of appellee did not affect it. The ruling of the court in this respect did not prejudice appellant.

It is said by appellant that there is no competent proof of the merchandise destroyed or the value thereof. The only testimony offered and received as to the stock was that of Buell S. Borden, appellee. There was an absence of evidence of the character, quantity, quality, or other descriptive detail of the merchandise destroyed. The witness, the owner of the insured property and the operator of the store, was asked if he had an opinion of the actual cash value of the property on the date of the fire. and he said he had. Upon further inquiry he stated his opinion. Objections of appellant to the witness being permitted to place his estimate of value in evidence were that proper foundation therefore had not been laid; that it was an improper method of attempting to value the property destroyed as a basis of recovery on the policy of insurance; that the inquiry called for the statement of a conclusion; and that the evidence was incompetent and irrelevant.

The witness identified, and there was received in evi-

dence, a detailed statement of the items of fixtures, but there was no foundation for the opinion of the witness concerning the value of the stock except that he was the owner of it at the time of the fire; that he had owned and operated the store for more than 3 years; and that he had prior thereto been employed and worked in the grocery business for about 20 years. Appellant insists that before the owner of property may testify to his estimate of its value there must be evidence of the character, nature, and description of it which the jury may consider in weighing the testimony of the owner on the issue of value. The appellant has incorrectly appraised the situation.

It has long been established in this state that the owner of personal property is qualified to express his opinion of the value of the property solely by his status as owner. In the early case of Western Home Ins. Co. v. Richardson, 40 Neb. 1, 58 N. W. 597, a member of the firm insured gave his opinion of the value of the stock of goods covered by the contract of insurance at the time of the fire as a unit and without stating any particulars concerning it. It was objected that it was not competent for him "to state in this wholesale way" the value of the goods, but that he should enumerate the articles. This court observed: "* * * it was competent for the witness to state the value of the stock in the store. Such evidence was not the statement of a conclusion, but of a fact. If the defendant desired, he could, on cross-examination, have interrogated the witness as to the value of the different articles and kind of goods." In Jensen v. Palatine Ins. Co., 81 Neb. 523, 116 N. W. 286, it was said: "It is contended by the defendant that there was no competent proof of the value of the goods destroyed * * *. The plaintiff Jensen testified to the value of the goods. He had purchased the same, they were in his personal charge, for a long time he had been selling from the stock at retail, and was undoubtedly competent to speak of the

value of any particular article. In proving the value of personal property, it is usually held that the owner is allowed to estimate its value, whether he is qualified as an expert or not." In Lincoln Supply Co. v. Graves, 73 Neb. 214, 102 N. W. 457, a husband and his wife testified as to the value of personal property owned by them. The court said this was permissible and observed: "The degree of their competency and the weight of their testimony being, of course, left to the determination of the jury as in other cases." A recent case, McGuire v. Thompson, 152 Neb. 28, 40 N. W. 2d 237, states the rule: "The owner of chattels is qualified by reason of that relationship to give his estimate of their value." See, also, Cox v. Greenlease-Lied Motors, 134 Neb. 1, 277 N. W. 819; Sprague v. Allied Mills, Inc., 129 Neb. 394, 261 N. W. 892; Folken v. Union Pacific R. R. Co., 122 Neb. 193, 239 N. W. 831; Miller v. Drainage Dist., 112 Neb. 206, 199 N. W. 28. It was decided in Baltimore American Ins. Co. v. Pecos Mercantile Co., 122 F. 2d 143, that: "* * * an owner who is familiar with property * * * connected with and used in a business may testify concerning its value, although he is not an expert * * *. And his estimates of value may be given either item by item or in gross amounts." See, also, Chicago & E. R. R. Co. v. Ohio City Lumber Co., 214 F. 751; Shook v. Beals, 96 Cal. App. 2d 963, 217 P. 2d 56, 18 A. L. R. 2d 919. The owner of the property was a competent witness to give evidence of the value of it.

Appellee called W. J. Bradford, J. R. Snyder, and Carl Brodbeck to testify concerning the value of the fixtures at the time they were destroyed. Appellant unsuccessfully contested the qualifications of each of them to express an opinion on this subject. The reception of their testimony is assigned as prejudicial error because it is said the trial court abused the discretion given it in regard thereto. The validity of this

assignment must be resolved by what the record shows concerning these men.

Mr. Bradford had lived in North Platte for 21 years, was then and had been in the grocery and meat business for 30 years, had known and been familiar with the store owned by appellee at the time of the fire since it was established in 1941, had been in it once or twice, by it many times, and had observed the fixtures therein. He had bought and sold this class of property and was able to form and express an opinion as to the value thereof. He had examined a list of the fixtures destroyed by the fire, had gone over the items thereof, and knew the extent and nature of them.

Mr. Snyder of North Platte was and had been for 24 years engaged in the retail grocery and meat business. He was co-owner of and active in the Snyder Food Market, a store 44 feet by 100 feet, which maintained a complete stock of groceries and meats, and a complete set of fixtures, furniture, and equipment for its operation. He had bought, sold, and traded property of this kind. He had kept himself informed as the the value thereof. He was familiar with the store owned by appellee. He was in it frequently before appellee became the owner. He had observed its contents on many occasions. It was comparable in size to the store of the witness. He had examined the list of the fixtures as they were at the time of the fire.

Mr. Brodbeck was a resident of North Platte for 59 years and had been in the retail grocery and meat business for 25 years. He had been in the Borden Market on infrequent occasions, knew its situation, and the fixtures therein. He was familiar with the property necessary for the operation of such a store and the value of property of this character. He had been shown and looked over a list of the fixtures of the Borden Market destroyed by the fire.

The books and records of the store were destroyed by the fire.

In Jensen v. Palatine Ins. Co., *supra*, it is said: "Where the value of a stock of merchandise is a relevant fact, and no more accurate evidence is under the circumstances obtainable, * * * witnesses acquainted with the value of the different articles of which it is composed, and who have observed the same for the purpose of estimating the value thereof, may give their opinion of such value." In Langdon v. Wintersteen, 58 Neb. 278, 78 N. W. 501, complaint was made of the admission of the testimony of a witness as to the value of the goods in controversy on the ground of lack of qualification. It was shown that she had frequently priced and bought similar articles at retail and in a general way knew their value. This court said: "This was sufficient. The weight of her testimony was for the jury. No very precise or extended knowledge of values of articles of common use is essential to justify the trial court in admitting opinion evidence of this character." It is recognized in Hansen v. Village of Ralston, 145 Neb. 838, 18 N. W. 2d 213, that: "One who is shown to be acquainted with property and its fair and reasonable value in the market is competent to testify as to such value." See, also, 20 Am. Jur., Evidence, § 894, p. 751; Penn-National Hardware Mutual v. Griffin, 174 Ark. 627, 296 S. W. 66, 53 A. L. R. 1106.

The qualifications of a witness to give testimony as to the value of personal property is a matter committed to the sound discretion of the trial court and its ruling thereon will only be disturbed when clearly erroneous. Hansen v. Village of Ralston, *supra;* Aurora Hotel, Inc. v. Board of Equalization, 140 Neb. 511, 300 N. W. 419; Jensen v. Palatine Ins. Co., *supra;* Langdon v. Wintersteen, *supra;* 20 Am. Jur., Evidence, § 891, p. 748. The action of the court in receiving the testimony of the witnesses named above was not clearly erroneous. In this situation their credibility and the significance to be given their testimony was for the consideration of the jury.

Appellee was permitted to testify that about April 10, 1949, he told the local agent of appellant at North Platte that he had maintained and then had $25,000 of fire insurance on his stock and fixtures; that he was discontinuing the insurance at its expiration; and that he could not afford to have more than $20,000 of insurance. They were then in the store of appellee. He was asked if the agent examined the contents of the store and his reply was: "* * * I can't say that he did, other than that he more or less just looked over the lay-out." The agent had at times been in the store as a customer. The agent said he thought appellee should have the amount of insurance he then had in force, but appellee maintained he could only afford $20,000 of coverage. Sometime after this conversation, the date not being shown more definitely than that it was in the spring of 1949, appellant acting by the agent issued its policy of fire insurance to appellee for a term of 1 year. Appellee did not have the policy but said the amount of it was $20,000.

Appellee also said that on about March 25, 1950, he had a conversation with the agent in which he said that if appellee had a loss under the 90 percent coinsurance clause and did not have enough insurance, and if the loss was partial and as much as 10 percent more than the face value, the company would only stand its share of the loss and the insured would lose the balance, and that he wanted appellee to have enough protection and suggested $25,000. Appellee stated that $20,000 was all that he could afford. Thereafter a policy for the period of April 10, 1950, to April 10, 1951, was issued and delivered to him by appellant. This policy was offered and admitted in evidence.

Appellee further stated that on about March 1, 1951, he talked with the agent about insurance for the ensuing yearly period and the agent discussed replacement costs and values of merchandise; he said these had increased; and he solicited appellee to increase his insurance to $25,000. Appellee refused to commit himself to any

figure but said he would consider it. About 10 days later he told the agent he had not made a decision. The agent saw him again about 2 weeks after the second conversation. They talked about increased costs and the Korean situation, and the agent made a proposal to increase the insurance but appellee said that he would only take the same amount he then had. The policy involved in this case was made a few days later. It was put in evidence. All of this evidence and each part of it was timely and properly challenged by objections of appellant. These were denied and the action of the court is assailed as erroneous and prejudicial.

Appellant by its contract indemnified appellee against loss by fire of the property described to the extent of the actual cash value of it at the time of the loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality, and not in any event exceeding the sum of $20,000. The single issue in this case was the amount of the actual cash value of the property at the time of the loss.

The policy in suit is an open one. Insurance policies for the purpose of valuation in the event of a total loss of the property involved are two kinds, open and valued policies. An open policy is one in which the value of the interest at risk is not fixed by it, but in the event of a loss it must be ascertained by mutual understanding or by proof. In Gerhard v. Boston Ins. Co., 99 F. Supp. 247, it is said: "A 'valued' policy is one which places a valuation upon the underwritten property by way of liquidated damages for the purpose of avoiding a subsequent valuation of the property in case of loss. * * * Such a phrase (not exceeding), in a policy of insurance, 'denotes that uncertainty of amount which is the chief characteristic distinguishing an 'open' from a 'valued' policy."

Lighting Fixture Supply Co., Inc. v. Fidelity Union Fire Ins. Co., 55 F. 2d 110, discussed an open policy in

this language: "We come now to the question of damages. The policy was an open one. It is a fundamental principle that such a policy of insurance is a contract of personal indemnity. The property is not insured against destruction, but the insured is guaranteed against loss, to the extent of his insurable interest, not exceeding the amount stipulated." See, also, Voges v. Mechanics Ins. Co., 119 Neb. 553, 230 N. W. 105; Linch v. Hartford Fire Ins. Co., 138 Neb. 110, 292 N. W. 27, 129 A. L. R. 1063; Lion Fire Ins. Co. v. Starr, 71 Tex. 733, 12 S. W. 45; Christiansen v. Bankers & Shippers Ins. Co., 49 S. D. 225, 207 N. W. 108; 6 Appleman, Insurance Law and Practice, § 3823, p. 169.

The amount of an open policy of insurance indemnifying the insured against loss because of damage to or destruction of property designated therein is no evidence of the value of the property or the extent of the loss. Such a policy of insurance is not even prima facie evidence of the extent of the loss. The very terms of the contract exclude such a conclusion. The amount stated in a policy of this class is not a substantive measure of damages, but is only a limitation upon what might be otherwise recovered under the terms of the policy. The exact and important language of the policy in suit is: "* * * to an amount not exceeding Twenty Thousand and No/100 _____Dollars, does insure Buell S. Borden * * * to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality * * * against all direct loss by fire * * * to the property described * * *." Voges v. Mechanics Ins. Co., *supra,* considered a similar policy provision and determined it: "* * * To be a valid stipulation and determinative of the rights and liabilities of the insurer and insured and applicable to losses not within the scope of the Nebraska valued policy act; * * * That, when applicable, 'the loss or damage shall be ascertained or estimated according to

such actual cash value * * *;' and * * * That the provision, 'the loss or damage * * * shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality,' constitutes merely a limitation upon the amount of the recovery, and is not a substantive measure of damages which the insured can invoke." See, also, Clouse v. St. Paul Fire and Marine Ins. Co., 152 Neb. 230, 40 N. W. 2d 820, 15 A. L. R. 2d 1008.

The syllabus of Standard Fire Ins. Co. v. Wren, 11 Ill. App. 242, states: "In an action upon a policy of insurance for a loss thereunder, upon a question of the amount or value of the goods destroyed, the policy is no evidence, and an instruction to that effect correctly states the law and its refusal is improper." The tendered instruction was: " 'The jury are instructed that the amount of the policy is no evidence of the amount or value of the stock, furniture or fixtures, at the time the policy was issued.' " In the opinion the court said: "There can be no doubt, we think, that this instruction states the law correctly. The policy is not a valued, but an open one and no value was placed upon the property in any form, either in the policy itself, or in any application or other paper executed by the parties at the time the insurance was effected. By its terms, the policy insured the plaintiff 'against loss or damage by fire to the amount of $1,500,' that amount being distributed in various sums on the several items of property insured, 'the amount of loss or damage to be adjusted according to the actual cost value of the property at the time of the loss.' Here was no admission either express or implied, that at the date of the policy, the property insured was worth the sum named in the policy or any other sum, but the value was left to be determined by evidence after a loss."

The language of Lion Fire Ins. Co. v. Starr, *supra.* is: "A policy of insurance on personal property is a contract on the part of the insurer to indemnify the insured

to the extent of the loss actually sustained, upon such conditions stated in the contract as are reasonable. A loss being shown, then the prime object of inquiry is the extent of the loss. The amount of the policy is not even prima facie evidence of the extent of the loss, for, by the terms of the contract, strict and particular proof of the extent of damage or amount of loss sustained is required to be made by the insured." See, also, Martin v. Capital Ins. Co., 85 Iowa 643, 52 N. W. 534; Joy, Wright & Hudson v. Security Fire Ins. Co., 83 Iowa 12, 48 N. W. 1049; Annotation, 56 A. L. R. 1155; 29 Am. Jur., Insurance, § 1184, p. 890.

There is an absence of evidence as to the value of the stock and fixtures owned by appellee at the time the policies were issued in 1949 and 1950, respectively, or at the time the conversations were had between the agent and appellee concerning insurance covering them. The policy issued in 1950, and the testimony of appellee concerning conversations with the agent and as to the contents of the policy made in 1949 were inadmissible. These were foreign to the issue on trial. The policies were not evidence of the value of the property when they were made or of the extent of the loss occasioned by the fire. A statement by an agent as to the value of the property, under the circumstances of this case, is inadmissible as original evidence of value. Murray Co. v. Gilbert (Tex. Civ. App.), 80 S. W. 2d 805; Smith v. Emporium Mercantile Co., Inc., 190 Minn. 294, 251 N. W. 265; 31 C. J. S., Evidence, § 343, p. 1113.

Any statement made by the agent as claimed by appellee in the testimony referred to above to the extent it purported to indicate the value of the property in the store of appellee was the expression of an opinion by the agent and was not the statement of a fact. It was not within an exception to the hearsay rule and was not binding upon appellant. An admission by an agent to be admissible in evidence against his principal must have been based on his own knowledge and must

have been a statement of fact and not an expression of an opinion. Wert v. Equitable Life Assurance Society, 135 Neb. 654, 283 N. W. 506; Shiman Bros. & Co. v. Nebraska National Hotel Co., 143 Neb. 404, 9 N. W. 2d 807; Wood River Bank v. Kelley, 29 Neb. 590, 46 N. W. 86.

Proof in the trial of a jury case should be confined to legal evidence which tends to prove or disprove the issues made by the pleadings. Evidence erroneously received in such a case may not be considered without prejudice against whom it is admitted if it may have influenced the result as to him. If it does not appear from an examination of the record that the evidence wrongfully received did not affect the result of the trial its reception must be considered prejudicial error. In Thompson v. Wertz, 41 Neb. 31, 59 N. W. 518, it is said: "The proof must be confined to the issues as made by the pleadings, and the admission of irrelevant testimony in a case tried to a jury is prejudicial error where it may have influenced the verdict." See, also, Bee Publishing Co. v. World Publishing Co., 62 Neb. 732, 87 N. W. 945; Exchange Bank v. Gifford, 102 Neb. 324, 167 N. W. 69; Macke v. Wagener, 106 Neb. 282, 183 N. W. 360; In re Estate of Parvin, 131 Neb. 853, 270 N. W. 470.

A consideration of the record prevents a conclusion that the jury was not influenced by the wrongfully admitted evidence. The purpose of producing it in the trial is obvious and is freely admitted. Appellee asserts that his design was to obtain a verdict for $20,000. The jury missed this amount by only $10. It cannot be said that the inadmissible evidence summarized above contributed less to the amount of the verdict than the other evidence. It was both inadmissible and prejudicial.

The evidence as to the value of the property at the time of its destruction was estimated by witnesses on the basis of their opinion as to the actual cash value or their opinion as to its fair reasonable market value. The terms actual cash value or fair reasonable market

value were used substantially interchangeably. The instruction of the court on the measure of the recovery stated in one part that actual cash value of the property is its market value and in another part that actual cash value is fair value. It also permitted the jury if it could not find market value of any part of the property from the evidence to find the fair value of it by considering its condition, its original cost, the amount by which it may have been depreciated by use or obsolescence, the current cost of replacement, its usefulness to the owner for the purposes for which it was intended, and any other matter bearing on the question of value. Fair value was not otherwise defined or explained. There was no like mention or specification of the matters which the jury could or should consider in determining market value of any of the property except the general charge that the case should be decided from a consideration of the evidence. The effect of this was that the jury was told that actual cash value was market value, and that actual cash value was fair value, and therefore indisputably fair value was market value, but that it should consider many things in arriving at fair value that were not required or permitted to be considered in arriving at market value. This instruction was incorrect and prejudicial. Linch v. Hartford Fire Ins. Co.; *supra;* Chard v. New York Life Ins. Co., 145 Neb. 429, 16 N. W. 2d 858; Umberger v. Sankey, 151 Neb. 488, 38 N. W. 2d 21, on rehearing, 151 Neb. 625, 38 N. W. 2d 551; Lynn v. City of Omaha, 153 Neb. 193, 43 N. W. 2d 527.

The jury should have been instructed, in the condition of the record, that actual cash value of property, as the words are used in this case, means the market value of it; that market value is the amount for which property may be sold by a willing seller who is not compelled to sell it to a buyer who is willing but not compelled to buy it; that the verdict should be for Buell S. Borden in the amount the jury found from the evidence was the market value of the stock of groceries and meats and

the fixtures, furniture, and equipment owned by him in his store and destroyed by fire on May 13, 1951; and that the jury in deciding the market value of the property should consider the situation and condition of the property as it was at the time and all the other facts and circumstances shown by the evidence that affected or had a tendency to establish its value. Clouse v. St. Paul Fire and Marine Ins. Co., *supra;* Voges v. Mechanics Ins. Co., *supra.*

The jury should also have been advised by the court, as the appellant requested, that the policy of insurance in force at the time of the fire was no evidence of the value of the property insured at the time the contract of insurance was made or at the time the property burned; that the amount stated in it is only a limitation of the maximum liability of the insurance company and has no bearing on, and is no proof of, the amount of the loss caused by the fire; and that the burden was on appellee to establish the actual cash value of the property by a preponderance of the evidence.

The cross-appeal contests the correctness of the order of the trial court which denied the application of appellee for an allowance as compensation of his counsel for services rendered in this case. It is argued that section 44-359, R. R. S. 1943, authorized such an allowance. The contract of insurance sued upon in this case relates only to indemnity for loss of personal property by fire. It has been determined that this section does not authorize an allowance to a plaintiff as compensation of his attorney for services in a case of this class. Security State Bank v. Aetna Ins. Co., 106 Neb. 126, 183 N. W. 92.

The additional contention is that it has been the uniform course of procedure to allow counsel fees in actions on insurance policies. This claim rests in assertion only. The sole case of this jurisdiction in which there was such an allowance referred to by appellee was resolved in this respect on the basis of "statutory power to allow such a fee" in a suit on a contract of insurance

providing against loss of personal property by fire. Johnson v. St. Paul Fire & Marine Ins. Co., 104 Neb. 831, 178 N. W. 926. The statutory power therein referred to was withdrawn by subsequent enactments. Laws 1919, c. 190, Title V, art. 4, § 46, p. 604 (§ 44-359, R. R. S. 1943); Laws 1919, c. 190, Title V, art. 5, § 1, subd. 5, p. 606 (§ 44-201, R. R. S. 1943). Neither statutory authority nor uniform course of procedure permits the recovery of an attorney fee in this case. Security State Bank v. Aetna Ins. Co., *supra;* Fulk v. School District, 155 Neb. 630, 53 N. W. 2d 56; Hawkeye Casualty Co. v. Stoker, 154 Neb. 466, 48 N. W. 2d 623. The cross-appeal is denied.

The judgment should be and it is reversed and the cause is remanded to the district court for further proceedings.

REVERSED AND REMANDED.